IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| SARA MENDLER, | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 09-2136 (JBS/JS) |
| v. | : | **OPINION** |
| AZTEC MOTEL CORPORATION, et al., | : |  |
| Defendants. | : |  |

---

APPEARANCES:

Joseph S. Lukomski, Esq.
ROVNER, ALLEN, ROVNER, ZIMMERMAN, LUKOMSKI & WOLF
Cherry Hill Professional Building
411 Route 70 East, Suite 100
Cherry Hill, NJ 08034
    Attorney for Plaintiff Sarah Mendler

Reid Howell, Esq.
NELSON LEVINE de LUCA & HORST, LLC
457 Haddonfield Road
Suite 710
Cherry Hill, NJ 08002
    Attorney for Defendants Aztec Motel Corporation d/b/a Aztec
    Motel, Adamo Pipitone and Jeanette Pipitone

**SIMANDLE**, District Judge:

I.  **INTRODUCTION**

    This matter is before the Court on Defendants Aztec Motel
Corporation d/b/a Aztec Motel, Adamo Pipitone and Jeanette
Pipitone's Motion to Preclude Plaintiff's Expert [Docket Item 23]
and Motion for Summary Judgment [Docket Item 22].  For the
reasons discussed below, the Court will grant both motions and
Plaintiff's complaint will be dismissed with prejudice.

## II.   BACKGROUND

The instant action is a personal injury suit arising from Plaintiff Sara Mendler ("Plaintiff") slipping and falling while getting out of the bathtub in her room at the Aztec Motel.  The Plaintiff brought the instant action for negligence against Defendants Aztec Motel Corporation d/b/a Aztec Motel, Adamo Pipitone and Jeanette Pipitone (collectively "Defendants")[1].

On or about May 23, 2007, the Plaintiff was staying at the Aztec Motel in Wildwood Crest, New Jersey, as a motel guest, as part of a senior citizens group. (Deposition of Sara Mendler ("Mendler Dep.") at 12:14-14:11)).  The Plaintiff's Room had a bathroom with a shower and a towel rack.  (Deposition of Adamo Pipitone, Sr. ("Adamo Sr. Dep.") at 125:12-19)).  While attempting to step out of the shower, the Plaintiff reached for the towel rack that was mounted on the wall to assist her. (Mendler Dep. at 25:3-13 ).  The towel rack then pulled out of the wall and consequently the Plaintiff fell backward and struck her head in the bathtub.  (Mendler Dep. at 25:13-26:1).

The Plaintiff has brought the instant action against the Defendants alleging negligence.  The Complaint alleges the Defendants knew or should have known of the dangerous or defective condition of the towel rack and the wall upon which it

---

[1]   Adamo Pipitone, Sr., and Jeanette Pipitone are the owners of the Aztec Motel.  Their son, Adamo Pipitone Jr., works at the Aztec Motel. (Adamo Pipitone Jr. Dep. at 8:10-16.)

was mounted and the likelihood that this would cause injuries to patrons on the premises. (Comp. ¶ 13). The Plaintiff alleges the Defendants were negligent for several reasons including:

> a. Failing to inspect, correct or have corrected, and/or repair or protect the premises from the dangerous condition of the towel rack and the wall upon which it was mounted
> b. Allowing latent hidden dangerous condition to exist on defendants' premises
> c. Failing to properly and adequately maintain the premises, in particular, the aforesaid towel rack in the bathroom of Room 100 and
> d. Failing to warn patrons, business invitees and/or the general public of the dangerous, hazardous and unsafe conditions on the premises.

(Comp. ¶ 20).

Discovery is complete and the Defendants have filed the instant motions to preclude Plaintiff's expert and for summary judgment dismissing Plaintiff's complaint. The Court will first address the Defendants' motion to preclude Plaintiff's expert and will then discuss the Defendants' motion for summary judgment.

## III.  MOTION TO PRECLUDE PLAINTIFF'S EXPERT

### A.  The Plaintiff's Expert Report

The Plaintiff's expert, Julius Pereira, III, issued a report which opines that the Defendants were negligent by failing to install a grab bar in the bathroom in Room 100 and that it is an industry standard to install grab bars in motel bathrooms. (Def.'s Ex. 1, hereinafter "Pereira Report"). Mr. Pereira supports his opinion by citing to the U.S. Consumer Products

3

Safety Commission and ASTM International Regulation ASTM 446
which requires a horizontal grab bar on the back wall of a
bathtub or a vertical grab bar on the service or non-service
wall.  (Pereira Report at 1-2.)  The Plaintiff's expert also
cites to the Accident Prevention for Hotels, Motels and
Restaurants, a nationally published safety reference specific to
the hospitality industry; Safety and Security in Building Design,
an internationally published reference for safe building design;
and the Human Factors Design Handbook and Handbook of Human Facts
and the Older Adult. (Pereira Report at 2-3.)  All of these
sources recommend the installation of grab bars to assist in
entering and exiting the bathtub.

Mr. Pereira's qualifications are not challenged in this
motion; he appears to be well qualified under Rule 702, Fed. R.
Evid.[2]

---

[2] Mr. Pereira is currently a consultant in private practice
providing forensic and non forensic technical consulting services
to the design, construction, property management, legal and risk
management professions.  Mr. Pereira has been working as an
architectural consultant for approximately the last 15 years.
Prior to this experience, Mr. Pereira worked as an architect for
more than 20 years and currently holds professional registrations
as a registered architect (inactive status) and a professional
planner in New Jersey.  He is also certified by the National
Council of Architectural Registration Boards.  In addition, Mr.
Pereira is a member of several professional societies and
affiliations, including the American Institute for Architects and
the International Facilities Management Association. (Pl.'s Ex.
2.)

### B.  Motion to Preclude Mr. Pereira's Testimony

The Defendants jointly filed the instant motion to preclude Plaintiff's expert.  The Defendants argue that the Mr. Pereira's expert report is inadmissible because it relies on regulations that were not applicable to the Aztec Motel and were not adopted by the State of New Jersey or in effect at the time of the alleged negligent conduct.  In addition, the Defendants argue that Mr. Pereira's expert report does not contain any factual evidence to support that the installation of grab bars in motel bathrooms is a generally-accepted practice or standard in the motel industry. Therefore, the Defendants contend that the Plaintiff's expert report is inadmissible and/or insufficient to raise a genuine issue of material fact and should be excluded.

The Plaintiff opposes the Defendant's motion to preclude her expert.  The Plaintiff does not dispute that Regulation ASTM 446 is not enacted in New Jersey and therefore cannot be used to prove negligence per se.  However, the Plaintiff contends that this regulation, along with the reports and standards cited by Mr. Pereira in his report, are relevant to show the existence of an industry standard for grab bars in motel bathrooms which can be used to establish negligence.  The Plaintiff argues that Mr. Pereira's testimony is relevant to the issues in the case and should not be excluded.

**C. Standard of Review**

The admissibility of expert witness testimony is governed by Rule 702, Fed. R. Evid., and the Supreme Court's decision in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and its progeny.  Rule 702 provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  As the Supreme Court explained in Daubert, district court judges perform a "gatekeeping role," 509 U.S. at 596, by assessing whether expert testimony is both relevant and methodologically reliable in order to determine whether it is admissible under Rule 702.  Id. at 590-91; see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 146-47 (1999) (holding that Daubert extends to testimony about "technical or other specialized knowledge") (internal quotations and citations omitted).

Under the law of this Circuit, Daubert and Rule 702 call upon the Court to examine the admissibility of expert testimony in light of three factors: the qualifications of the expert, the reliability of his or her methodology and the application of that methodology, and whether the testimony fits the matters at issue

in the case.  In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-43 (3d Cir. 1994).  With regard to the qualifications prong, the Court of Appeals has explained that an expert's qualifications should be assessed "liberally," recognizing that "a broad range of knowledge, skills, and training qualify an expert as such."  Id. at 741.

In addition to being qualified to testify in an expert capacity, an expert witness whose testimony is offered by a party must base her opinions on reliable methodology.  The Court of Appeals explained in Paoli that

> Daubert explains that the language of Rule 702 requiring the expert to testify to scientific knowledge means that the expert's opinion must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his or her belief.  In sum, Daubert holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity.

Id. at 742 (internal quotations and citations omitted).  Recognizing that the "inquiry as to whether a particular scientific technique or method is reliable is a flexible one," the Court of Appeals has identified a nonexhaustive list of eight factors[3] that courts may address in determining whether an

---

[3] The factors identified by the Court of Appeals for assessing the reliability of an expert's methodology are:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the

expert's methodology is reliable.  Id.; see also Heller v. Shaw Industries, Inc., 167 F.3d 146, 152 (3d Cir. 1999).

Finally, to be admissible under Rule 702, expert testimony must "fit," or be relevant to, the facts at issue in the case. Paoli, 35 F.3d at 743.  "Because Rule 702 demands that the expert testimony assist the trier of fact, such testimony will be admissible only if the research is sufficiently connected to the facts and issues presented in a given case." Suter v. General Acc. Ins. Co. of America, 424 F. Supp. 2d 781, 787 (D.N.J. 2006) (citing Paoli, 35 F.3d at 743).  In other words, Rule 702's relevance standard requires that there be "a valid scientific connection" between the expert's testimony and the facts and issues in the case in order for the expert's testimony to be admissible.  Paoli, 35 F.3d at 743.

**D. Analysis**

Mr. Pereira's report is offered by the Plaintiff to prove the existence of an industry standard requiring the installation of grab bars in motel bathrooms.

Rule 702 requires that expert testimony be based upon

---

technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

Paoli, 35 F.3d at 742, n.8.

sufficient facts or data.  Fed. R. Evid. 702(1).  When expert
testimony is offered to prove the existence of an industry
standard, an expert must offer "evidence of actual customary
practices or safety procedures to establish an industry
standard." Diaz v. New York Downtown Hospital, 287 A.D.2d 357,
358 (S.D.N.Y. 2001).  An expert report which "relies solely on
the written guidelines, to the complete exclusion of any
evidentiary facts supporting an actual custom or practice" is
insufficient.  Id.  Importantly, while "noncompliance with such a
customary practice or industry standard may be evidence of
negligence, the failure to abide by guidelines or recommendations
that are not generally accepted standards in an industry will not
suffice to raise an issue of fact as to a defendant's
negligence."  Id. at 358 (citations omitted).

     In this case, Mr. Pereira's report relies solely on written
guidelines and does not present any factual evidence of an actual
industry standard in the hotel industry.  Mr. Pereira's report is
devoid of any mention of an actual motel which abides by the
cited requirements and has a grab bar installed in each bathroom.
Rather, Mr. Pereira's report cites several safety reports, most
of which are not specific to the motel industry or the New Jersey
area.  Indeed, the parties agree that there is no New Jersey
regulation in place which requires motels to install grab bars in
bathrooms.

In addition, the reports cited by Mr. Pereira are more than 10 years old, and some more than 30 years old.  Given that these recommendations have been established for a significant period of time and have not been recognized through any state or local action, it is not persuasive that Mr. Pereira's cited reports establish an actual industry standard.  Nor does Mr. Pereira offer evidence to support any opinion that it is an industry practice to design and install bathroom towel racks to serve a dual function as a grab bar for a bathtub.

Where the expert cites only to guidelines or generalized safety recommendations, what is missing is reference to actual practice in the industry through examples gained from research or design experience.  A collection of publications, as Mr. Pereira offers, unaccompanied by specialized knowledge of actual industry practice in hotel operations, might be relevant to the feasibility of grab bars, but such is not an issue here.  Where plaintiff seeks to prove deviation from an industry standard as evidence of negligence, that standard must be shown through suitable industry-wide practice.  None has been provided as a basis for Mr. Pereira's opinions here.

Absent evidentiary facts which support his opinion, Mr. Pereira's report is "no more than subjective belief" and is insufficient to raise a genuine issue of material fact.  Murray v. Marina District Development Company, 311 Fed. Appx. 521, 524

10

(3d Cir. 2008).  Therefore, Mr. Pereira's expert testimony will
be precluded because it does not rest upon a reliable methodology
and the aspect for which it could be probative - the feasibility
for installing grab bars on hotel bathtubs - is not disputed in
this case and thus the opinion also does not fit the dispute.

## IV. MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment is appropriate "if the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a).  A dispute is "genuine" if "the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A
fact is "material" only if it might affect the outcome of the
suit under the applicable rule of law.  Id.  Disputes over
irrelevant or unnecessary facts will not preclude a grant of
summary judgment.  Id.

Summary judgment will not be denied based on mere
allegations or denials in the pleadings; instead, some evidence
must be produced to support a material fact.  Fed. R. Civ. P.
56(c)(1)(A); United States v. Premises Known as 717 S. Woodward
Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993).  The
nonmoving party must "do more than simply show that there is some

11

metaphysical doubt as to the material facts." <u>Matsushita Elec.</u>
<u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986).

> [Rule 56] mandates the entry of summary judgment,
> after adequate time for discovery and upon motion,
> against a party who fails to make a showing
> sufficient to establish the existence of an element
> essential to that party's case, and on which that
> party will bear the burden of proof at trial.  In
> such a situation, there can be "no genuine issue as
> to any material fact," since a complete failure of
> proof concerning an essential element of the
> nonmoving party's case necessarily renders all
> other facts immaterial.

<u>Celotex</u>, 477 U.S. at 323.

However, the Court will view any evidence in favor of the
nonmoving party and extend any reasonable favorable inferences to
be drawn from that evidence to that party.  <u>Hunt v. Cromartie</u>,
526 U.S. 541, 552 (1999).

**B. Plaintiff's Prima Facie Case**

In this action, the Plaintiff contends that the Defendants
were negligent in failing to safely maintain the premises of the
Aztec Motel. In order to establish a claim for negligence, a
plaintiff must prove three elements:  (1) a duty of care owed by
defendant to plaintiff; (2) a breach of that duty by defendant;
and (3) an injury to plaintiff proximately caused by defendant's
breach.  <u>Endre v. Arnold</u>, 300 N.J. Super. 136, 142 (App. Div.
1997).  "Whether a duty exists is solely a question of law to be
decided by a court and not by submission to a jury." <u>Id.</u>

### 1. Duty

Under New Jersey law, "the duty of a motel owner is not to insure the safety of guests but only to exercise reasonable care to discover and correct dangerous conditions." Ranalli v. Edro Motel Corp., 298 N.J. Super. 621, 627 (App. Div. 1997).  The New Jersey Appellate Court discussed the duty of care owed by a motel owner to its guests, explaining:

> A motel guest reasonably can expect that the owner diligently will inspect the premises for defects and cure any deficiency discovered. But the guest cannot reasonably expect that the owner will correct defects of which he is unaware and that cannot be discerned by a reasonable inspection. This basic element of actual or constructive notice in the area of motel owner liability arising out of the duty to maintain and repair [the] rented premises is ingrained in our law as a necessary prerequisite to a finding of negligence--the failure to exercise reasonable care.

Id.

In this case, the Plaintiff alleges that the Defendants owed the Plaintiff a duty to install grab bars in the bathrooms of the motel.  The Plaintiff argues that the Court should expand the traditional duty of care owed by motel owners to guests to include a duty to install grab bars in bathrooms.  The Plaintiff contends that the imposition of this duty is reasonable because the Plaintiff paid for an accommodation, the attendant risk in a bathroom of slip and falls is substantial, and the Defendants had the opportunity and ability to exercise care by installing grab bars in the motel rooms.  The Court finds this argument

13

unpersuasive.

A motel owner, under New Jersey law, owes a duty to motel guests to discover and correct dangerous conditions on the premises.  In contrast, a motel owner does not owe a duty to insure the safety of its guests.  Ranalli, 298 N.J. Super. at 627.  The installation of a grab bar in a bathroom is a measure taken to increase the safety of exiting and entering a bathtub. The absence of a grab bar, however, does not render a bathroom inherently dangerous.  Rather, grab bars are more akin to preventative safety measures.  By recognizing a duty to install grab bars in bathrooms, this Court would be imposing a stricter duty of care on motel owners to implement preventative safety measures than is recognized by case law, state regulations or industry custom or practice under New Jersey law.

Further, the Plaintiff has not met her burden of proof showing a duty on the part of the Defendants to install grab bars in bathrooms.  Plaintiff's expert's opinion regarding negligence in failing to install grab bars is inadmissible, as determined above.  The Plaintiff cites no regulations applicable to the Aztec Motel which require grab bars to be installed in bathrooms, as also noted above.  The Plaintiff presents no admissible evidence of an industry custom or practice of installing grab bars in bathrooms.  Finally, the Plaintiff cites no case law supporting the imposition of a stricter duty of care beyond the

14

traditional duty owed by motel owners to exercise reasonable care to discover and correct dangerous conditions.

Therefore, the Court finds that the Defendants had no duty under the current law of New Jersey to install grab bars in the Aztec Motel's bathrooms.  However, the Court will continue to analyze Plaintiff's negligence claim under the traditional duty of care owed by motel owners to motel guests: the duty to discover and correct dangerous conditions. Ranalli, 298 N.J. Super. at 627.

### 2. Breach

The Plaintiff argues that the Defendant breached the traditional duty to discover and correct dangerous conditions through the following conduct: failing to issue a warning not to use the towel bar to assist onself in exiting from the bathtub; failing to properly inspect the towel bar; failing to advise the Plaintiff or post a notice in her room that other accommodations such as a shower chair would be made available upon request.  The Court will address each of these alleged breaches separately.

First, the Defendants did not have a duty to warn regarding the use of the towel bar as a grab bar.  As discussed above, the Defendants, as motel owners, owed the Plaintiff "the duty of maintaining their premises in a reasonably safe condition.  This duty logically encompasse[s] the obligation to warn plaintiff when defendants became aware that the premises were no longer

safe." <u>Johnson v. Kolibas</u>, 75 N.J. Super. 56, 65 (App. Div. 1962).  In order to show a breach for failure to warn regarding the use of the towel bar as a grab bar, the Plaintiff must show that the Defendants were "aware that the premises were no longer safe" because motel guests, like the Plaintiff, used the towel bar as a grab bar.

Here, there is no evidence in the record showing that the Defendants were aware that towel bars were being used by hotel guests as grab bars.  The Plaintiff points to the deposition of Adamo Pipitone, Jr., who works at the Aztec Motel, in support of her allegation that the Defendants knew the towel bars were being used as grab bars.  Mr. Pipitione states in his deposition that he considered the area where the bathtub is to be a hazardous area of the motel room.  In addition, he admitted that the towel bar was close enough for a person attempting to get out of the bathtub to reach and grab onto and that there was nothing other than the towel bar that a person could reach to assist them in exiting the bath tub.  Finally, Mr. Pipitone stated in his deposition that towel bars were broken, loose, and/or in need of repair from time to time.

These facts are insufficient to impute knowledge onto the Defendants that motel guests used the towel bars as grab bars. Even with the favorable inferences given to Plaintiff as the non-moving party, these facts do not present a triable issue of

16

material fact.  There is no evidence that prior injuries occurred to motel guests using the towel bar as grab bars or of any prior instances where towel bars broke because they had been used as grab bars.  The fact that the towel bar was close to the shower is not probative because it is not uncommon for towel bars to be close to the shower considering guests need to easily access their towels upon exiting the shower.

In addition, Plaintiff's evidence of Mr. Pipitone's testimony that a wet bathtub is hazardous is insufficient to establish liability.  Mr. Pipitone, Jr., merely stated a risk which is self-evident to motel guests as using the shower creates a wet surface which is an open and obvious hazard.  An open and obvious hazard is insufficient to establish liability.  See Restatement Second of Torts, § 343A ("a possessor of land is not liable to his invitees for physical harm caused to them by an activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness"); Longo v. Aprile, 374 N.J. Super. 469, 474 (App. Div. 2005) (holding that there was no breach of duty of care when failure to warn involved danger that was self-evident) and Endre, 300 N.J. at 143 (holding no duty to warn when the danger was obvious).

The Plaintiff also points to the statement of an unnamed manager to impute knowledge on the Defendants.  The Plaintiff

17

states in her deposition that after the fall, she "took the bar and went over to the office and showed the manager what I had done and he said things happen like this.  And I told him that when I got out of the tub, I pulled it out of the wall." (Mendler Dep. at 28:18-23.)

This statement is insufficient to impute knowledge on the Defendants that guests were using towel bars as grab bars.  The Plaintiff did not tell the manager that she used the towel bar to assist herself in exiting the bathtub and the Plaintiff did not tell the manager that she fell because she pulled the towel bar out of the wall.  She merely stated that the "when I got out of the tub, I pulled it out of the wall."  The plain reading of this statement indicates that the Plaintiff pulled the towel bar out of the wall after she got out of the tub and reached for her towel.  The manager's response that "things happen like this" must be read in this context, and cannot reasonably be construed to mean more than the acknowledgment that towel bars break from time to time.  Therefore, this dialogue between the Plaintiff and the unknown manager is insufficient to impute knowledge on the Defendants that motel guests frequently used towel bars as grab bars and broke them.

The Court finds that there is insufficient evidence that the Defendants knew motel guests used the towel bar for anything other than to hold towels.  At best, all the Plaintiff's evidence

shows is that towel bars broke from time to time.  Therefore, the Court finds the Plaintiff's argument that the Defendants breached their duty by failing to warn guests not to use towel bars as grab bars is without merit.

Failing to advise the Plaintiff of other accommodations such as a shower chair is also insufficient to show a breach of the Defendant's duty of care.  A motel owner "is not an insurer of the safety of his guests." Johnson, 75 N.J. Super. at 64.  There is no evidence in the record that the bathtub was in a dangerous or unsafe condition.  The Defendants only had a duty of "maintaining their premises in a reasonably safe condition." Id. at 65.  If the Plaintiff felt she needed further individualized accommodations to enter and exit the bathtub, this need would have been self-evident to the Plaintiff upon viewing the bathroom and it was incumbent upon her to then request such an accommodation.  The Defendants did not breach their duty of care by failing to advise Plaintiff of additional accommodations, like a shower chair, which were available upon request.

The Plaintiff's argument that the Defendant failed to properly inspect the towel bar merits further discussion.  Under the traditional duty of care, a motel owner has a duty to discover and cure dangerous conditions on the premises.  Ranalli, 298 N.J. Super. at 627.  Here, the Plaintiff alleges that the Defendants breached this duty of care by failing to inspect the

towel bars.  The Plaintiff supports this allegation by pointing
to the depositions of Defendants Adamo Pipitone, Sr., Jeanette
Pipitone, and Adamo Pipitone, Jr.   Adamo Pipitone, Sr., and
Jeanette Pipitone are the owners of the Aztec Motel.  Their son,
Adamo Pipitone Jr., works at the Aztec Motel. (Adamo Pipitone Jr.
Dep. at 8:10-16.)

     Adamo Pipitone, Sr., testified that there was no policy
regarding the inspection of towel bars during the off season
between November 2006 and April 2007. (Adamo Jr. Dep. at 137:11-
24.) However, he testified that during the open season, including
in May 2007, the maids were instructed to inspect the towel bar
when they put new towels in the rooms. (Adamo Jr. Dep. at 138:15-
16.)  Mr. Pipitone, Sr., explained that the maids were instructed
"as they're putting, you know, the towels on the bar, if it seems
loose or it won't – if it doesn't support anything, they have to
you know, let us know." (Adamo Jr. Dep. at 138:15-19.)

     In addition, Adamo Pipitone, Jr. testified that he inspected
the towel bars during the off season from November 2006 prior to
opening in May 2007.  Mr. Pipitone, Jr., stated that he would
"physically go in and handle it, see if it's on the wall." (Adamo
Sr. Dep. 34:13-14.)  He further explained that by handling it, he
meant "grabbing it and seeing if it's loose from the wall."
(Adamo Sr. Dep. 34:9-10).

     Finally, Jeanette Pipitone said she did not conduct a

physical, manual inspection of the towel bars but would do a visual inspection to make sure the towel bar was properly supporting the towels.  She said she did a visual inspection because "you could see if it's loose.  The towels wouldn't be hanging." (Jeanette Pipitone Dep. at 180:5-14.)

The Plaintiff argues that these facts present a genuine issue of material fact with regard to whether the Defendants breached their duty to discover and cure dangerous conditions.  The Court finds this argument without merit.

A motel owner "is not an insurer of the safety of his guests." Johnson, 75 N.J. Super. at 64.  In this case, the Defendants inspected the towel bar in accordance with the function of a towel bar, namely, its ability to hold towels.  As discussed above, the evidence does not show that the Defendants knew the towel bar was being used as a grab bar to assist guests in exiting and entering the bathtub.  Therefore, there was no reason for the Defendants to inspect the towel bar by pulling on it or bearing weight on it as the Plaintiff suggests.  Rather, the Defendants were under a duty to maintain their premises in a reasonably safe condition.

There is no evidence in the record that the towel bar was in a dangerous condition with regard to its stated function - to hold towels.  The towel bar only became dangerous after the Plaintiff used it for a purpose outside its limited function.

The Defendants were not under a duty to inspect the towel bar for anything other than holding towels, which the evidence shows was done properly.  Therefore, the Defendants did not breach their duty for failing to inspect the towel bar for a function outside the towel bar's intended purpose.

The Court finds that the Plaintiff has not presented a genuine issue of material fact with regard to whether the Defendants breached a duty of care owed to the Plaintiff.  No rational jury could conclude that a breach occurred.  Therefore, the Defendants' motion for summary judgment is granted.

## V.  CONCLUSION

For the reasons stated above, the Court finds that Plaintiff's proposed expert, Mr. Pereira, did not base his opinion on actual facts to support his conclusion that an industry custom and practice existed with regard to the installation of bathtub grab bars in motel bathrooms.  Indeed, Mr. Pereira's opinion rested solely on written guidelines not applicable to the Defendants' motel and was devoid of any factual basis supporting his opinion regarding an actual industry standard to install grab bars in motel bathrooms.  Therefore, the Could will grant Defendants' motion and preclude Plaintiff's proposed expert.

The Court will also grant the Defendants' motion for summary

judgment.  As stated above, the Court finds that the Defendants were under the traditional duty of care to maintain a reasonably safe premises and discover and cure dangerous conditions, and that the Defendants were not under a duty to insure the safety of their motel guests, and that upon the facts presented, no reasonable jury could find that the Defendants violated this duty of care.

That this accident occurred and that Mrs. Mendler was injured was indeed unfortunate, but the mere happening of an accident is not proof of a defendant's negligence.

Therefore, the Court will grant the Defendants' motion for summary judgment and the Plaintiff's complaint is dismissed.

The accompanying Order will be entered.


**December 7, 2011**                    **s/ Jerome B. Simandle**
Date                                JEROME B. SIMANDLE
                                    United States District Judge


23